Good morning. I'm not used to having any of our cases move that quickly, so I was ready to assume it's afternoon. But don't make that balance for yourselves that you have all the time in the world, although we will give you enough time, but the time to which you're going to take some time for rebuttal as well. But again, we generally have a habit of practice, I should say, of keeping you here until we're satisfied that we have enough input from you to have made the oral argument worthwhile. At any rate, with that, we'll have the clerk call the case that is now going to be heard. And when that's done, I would ask counsel for each side to step up to the dais and identify yourselves for the record. At that point, the appellee may be seated and the appellant could commence the argument. Case number 11-1645, Cardenas Marketing Network v. Evaristo, R.D. Pabon, Jr. Good morning, Your Honors. Lovisa Popovich on behalf of the defendant's petitioner. Good morning. My name is Terrence Jordan, J-O-R-D-A-N, on behalf of the appellee, Cardenas Marketing Network, Inc. Thank you. I was just surprised that we are privileged this morning to have with us students who, with their professor in our audience, that should keep us on our toes, don't you think? At any rate, why don't you proceed when ready. Certainly. May it please the court, would Your Honors care for a brief recitation of the facts before I move on to the issues in the case? Well, speaking only for myself, although we do read the briefs rather carefully, some redaction of the facts never hurts to refresh memories and to lead them to the point that you think you want to emphasize. Absolutely. In this case, Land Entertainment Group is a corporation that's incorporated in Connecticut and the president and chief shareholder is Evaristo R.D. Pabon, the defendant petitioner in this case. CMN, which is Cardenas Marketing Network, is a corporation incorporated in Florida. At issue here... Now, Cardenas himself is an Illinois resident. Correct. The company is incorporated in Florida and has some business here in Chicago as well. At issue here is the trial court's order denying our motion to dismiss based on lack of jurisdiction in a number of contracts that the parties had between each other, separate and individual contracts that stood alone. In this case... We're kind of interested in getting a more complete sense as to whether we're dealing with one unifying contract with subparts or whether we're dealing with individual contracts. We're also interested in knowing that even if we're dealing with individual contracts, since they do involve similar transactions between the same parties, whether that might not be enough at least to generate a contact now that the long arm statute of Illinois is subject to, what is it, 209C, which upholds the United States Constitution and the state of Illinois Constitution as the limits, as the contact limits, to the point where at least Justice Griman, in one of his opinions, indicated that with those provisions we don't even need the other provisions. Some courts seem to be inclined to say that the constitutional limitations do not exceed the specific types of conduct enumerated, but Justice Griman makes a very clear statement that, in effect, once we have the constitutional limits, there is really no necessity for any of the other contactual elements specified in that rule, and I presume it's basically residual from the previous statute. Certainly, but as Your Honor also pointed out in the opinion that you offered in South v. Birding, there has to be an act that arises out of the jurisdiction. If we're looking at the long arm statute, which we are in this case, general jurisdiction is not an issue, we're looking at the long arm statute and whether it would offend Illinois principles of jurisdiction to have a Connecticut corporation and a Florida corporation... When you're talking about specific jurisdiction as opposed to general. Correct. I'm sorry, but I think we should go first to the jurisdiction, whether there was a waiver of the jurisdiction by Pavone with his first petition, then subsequent petitions filed by an attorney, and whether or not any of those caused him to submit to the jurisdiction of the court. Your Honor, from the very beginning of this, jurisdiction has been an issue. It has never been raised other than a jurisdiction issue, both with Judge Taylor and with the plaintiffs. So there's a waiver of whatever waiver there would have been, unlike subject matter jurisdiction, which is not subject to such waiver in persona jurisdiction is. But is that waiver binding on us? There is no waiver in this case because the very first motion that was filed, and granted it was a pro se motion so it was not quite as artful, but in that pro se motion was an objection to the jurisdiction that the defendant, that Mr. Pavone filed himself, and that was filed in May of 2010. So from the very get-go, the very first motion. Wasn't there a preliminary motion that was geared towards discovery? No. I thought there was an early motion that dealt with the 201 discovery. That came later on. You're correct. That did come later on. Before the motion to quash or the motion to dismiss based on lack of impersonum jurisdiction. Absolutely. On appeal, they have argued that he waived jurisdiction. This is the first time they're arguing it on appeal for the first time, because it wasn't an issue in the trial court. Judge Taylor didn't take it as an issue and neither did the defendant. This is being raised for the first time here, and we haven't waived it because the defendant himself filed the pro se motion. But as an appellee, they can raise any issue to support the trial judge's decision. Certainly. So you do have to respond to the suggestion that there was a waiver, whether you like it or not. So to say they didn't raise it below, they are here as the appellee. Correct. They can suggest anything to this court to support the ruling of the trial court. So you, as the appellant, have to respond. Correct. It's not really waived. It's whether or not this supports the judgment. Correct. In this case, our position is that the initial motion that was filed was for lack of jurisdiction. When that was filed, that was not a general appearance. That was not something that would give Illinois jurisdiction. Then followed an alternative motion for form non-convenience. And as your honors are aware, generally those are filed at the same time for judicial economy so that you don't go through an entire briefing schedule just on jurisdiction and then do the exact same thing just on form. When was the discovery motion? That came much later on. That came when the plaintiff attempted to do what was tantamount to asset discovery. And we objected on the basis that it was improper because the only issue in front of the judge was on jurisdiction. Wasn't there also a motion for substitution of judges? Correct. And when did that happen? That came after the defendant filed his pro se motion objecting to the court's jurisdiction over a Connecticut and a Florida corporation. So that came after that. But it is the very first motion. The very first motion that was filed was by the individual, Mr. Cabomo. Correct. And in that motion he did challenge jurisdiction on two separate grounds and then he also asked to dismiss or fulfill his data claim. Correct. Correct. So the statute allows for preserving the jurisdiction issue, it would be your position, so long as that initial motion includes a motion contesting the jurisdiction of the court. Correct. Did that motion also satisfy the prerequisites of 619.1 as to the form that such combined motions must take in order to preserve the jurisdictional contention? Well, under 619 it … They have to be clearly identified. And they were. They were. You had paragraph one, you had paragraph two, and you had paragraph three. Although he cites federal rules instead of 619. Correct. And that was exactly why we filed an additional motion contesting the jurisdiction, flushing it out, and including the Illinois law so that we could argue it in front of Judge Taylor. And in this case, jurisdiction from the very beginning, in fact, in one of the orders, because we went to great lengths to preserve the jurisdiction, in one of the orders on January 28th … Really, I think it was whether Mr. Cabomo preserved it or not, because the initial motion … Correct. … was going to stand or fall. Correct. Initially, it was preserved. He had filed it pro se. And in the January 28th, 2011 order, the judge even stated that any further 201L discussions, in terms of discovery, would not waive any of the jurisdiction arguments that we had consistently been making. In fact, when we did do depositions, part of the objection was that it didn't address jurisdiction. What about the forum selection clauses in these contracts? Wouldn't those forum selection clauses automatically extend jurisdiction in personam, as well as establishing the prerequisites for the forum, so long as it meets the reasonableness test of Kalonka and Dace? Well, in this case, there's six variables to look at when we're looking at the forum selection clause. And just to point out, in the contracts that are attached, the forum selection clause is all for individual contracts that are outside of Illinois, for Washington, Virginia, and Connecticut. So can someone be selecting a forum selection clause for a contract that's not … that's either oral or it's simply missing? In this case, they're forum shopping. Hold on for a minute. I don't follow your facts yet. Are you saying there were no written contracts in which forum selection was designated? No, no, no. I mean overall in this whole series. No, there were forum selection clauses. In each of those written agreements. Now, are any of the contracts that were written in Illinois subject to any dispute at this moment? Absolutely. Or do they all hang on your definition of series? Well, there is a … You're not suggesting there was a series. Didn't Mr. Pabon say that there was no umbrella oral agreement? Absolutely. He said that there were individual contracts that were designated for each concert. And in particular, he said that there was no oral agreement. No. But the plaintiff has suggested that there was some overall oral agreement that somehow bound all the written agreements. Correct. Not just the written agreements or at least one of the ones that's in the record. They have integration clauses. Exactly. Let me get one thing. Well, I'd like to, if I might, clarify the forum selection situation. Was there a forum selection clause in each of the agreements that are now being litigated? I believe in one there was a forum selection clause for a contract and an event that had nothing to do with Illinois. I understand. But is it now being litigated in Illinois? The contract. Yes. They have attached a contract. And that's where you're challenging jurisdiction. Now, with respect to that, didn't the forum selection clause obviate any dispute as to any other context that would have been necessary? No, it would not. Why not? Because the forum selection clause is simply one of six items that need to be considered. Is that the way you interpret the case law on this subject, that you can't simply provide for choice of forum for jurisdiction purposes independently of any other considerations as by law of contract, which you call forum shopping? But I think that's a misnomer, isn't it? Because forum shopping is a term applied to apprentice who unilaterally selects a forum, generally the domestic forum for which there are no other contacts so as to earn the discouraging position of our Supreme Court and our intermediate courts as well, that to discourage a party from simply choosing a state based on where he's going to get the better deal out of the jury. But now that there's a consensual contract where the contract was not obtained through superior bargaining powers, so it's not a contract of adhesion, and it's voluntary, and it presumes, I think, to conform to the requirements of any other contract to be enforceable so that it doesn't constitute something through any kind of action that would void it. But it's a contractual term. Well, let me just take a step back. And just to be perfectly clear, our position as series is a completely manufactured term. It is not in Snout, it's not in Coast Guard. Forget about the series. But that makes an impact because in 2007, when the concert in Chicago was done, there was absolutely no argument. And that's the question, isn't it? That's the main question. First of all, the plaintiff relies on one provision of the statute to obtain jurisdiction. Correct. The trial court concluded that Latin Entertainment does not do business on a regular basis. And they don't. So that was ruled out. But the only way to obtain jurisdiction was based on the plaintiff's claim that the cause of action arose from the making or performance of a contract in Illinois or a promise substantially connected with the state. So the question is this. You've got the bone saying no money was owed. First of all, there is no contract for Illinois. There isn't. Exactly. And neither side has come up with any written contract for anything in Illinois. There is nothing. Now, you've got the bone saying no money is owed. Nothing came from Illinois. There's no contract that resulted in the owing of money. Right. And you have Cardenas saying, on the other hand, that there is money owed and that this was some series of agreements, some oral series of agreements that had subsequent written contracts for some of the events but not the others. Now, my question to you is this. Was there an evidentiary hearing in this case or not? Or did the court simply review what had been provided? The court simply reviewed what had been provided in the argument. Now, don't the cases say, when there's a question of material fact remaining, that the court must conduct an evidentiary hearing? Correct. So is there a question of material fact when you have two people contesting whether any money was owed in Illinois after a couple of contracts? As I understood your assertions about money being owed, it was premised on the, not you, but the plaintiff's indication, but was premised on this broad definition of series. Right. And so that the money that was owed, there was no indication in the brief, and we'll find that out when your point comes up, that money was owed on the specific agreements that you contend are being litigated, as opposed to those of which there is, for which there, pursuant to which there is no dispute. And I still need to know, if I can, whether that, there were choice of forms for, I guess, in each of those contracts that are, according to your perspective, under litigation, under dispute at this point, and also a choice of law. Now, when you talked earlier about the choice of form being one of the factors in a form, in a choice of form, you meant choice of law, but was there also a choice of form for litigation purposes, not merely a choice of law? I haven't seen that in the record yet, so I'm looking to you and to your opponent for input. The contracts that are attached don't have that for this litigation. They don't have that. And just to also be very clear, there is no dispute. Both the plaintiff and the defendant both agree that when the concert in 2007, the concert here that the dispute was done, the defendant, Mr. Pabon, was owed money. So there actually isn't any dispute as to whether that was paid. The confusion is whether or not, whether there was an agreement to have a series of events that were substantially connected with the state. Absolutely not, because each contract is on its own. But Mr. Cardenas says there was. Mr. Pabon says there wasn't. Mr. Cardenas has to say there is, because that's the only way you get jurisdiction. But isn't that entire area of inquiry, isn't that subject to being unnecessary? If, in fact, those contracts which you concede are now under dispute and which you agree should determine the proper forum state, don't those contracts each contain a choice of law provision and a choice of forum position? They do not. They do not. The five attachments they attach, the first one was a co-promotion contract, having an integration clause for a Cheyenne concert in Connecticut. The second attachment, Exhibit B, is just the first two pages of the same co-promotion agreement. The third one is a co-promotion agreement for a Daddy Yankee concert in Fairfax, Virginia, which they call Washington, D.C. You didn't take discovery to get the full agreement? We were objecting to jurisdiction. We had discovery. Aren't these related to the jurisdictional issue? This is the underpinning of our jurisdiction argument. There is no series because each of these are individual. It's a really solid question. Was there a series or were there individual contracts? Until that is definitively resolved, I don't know how you can rely on one provision that says this should be litigated in Illinois. Let's go to the counts three through six or three through seven. Count two is for an account stated based on an instrument to our Virginia originally filed claiming there is a big series of contracts. The latter four counts, they relate to money owed from the casino in Connecticut. Does that contract, is there a written contract for that or not? There is a written contract. Does that say that the dispute shall be resolved in Illinois? That contract for the Mahegan Sun I don't believe has a selection clause on that, but it does have an integration clause. Yes, but you're saying that that has no forum selection clause. I don't believe that one does. I would have to double check to see. Well, that's kind of significant. No, but if it does have a forum selection clause. Even if it does have one under the case law of this jurisdiction, that's not the only issue that the courts look at. One is the residency of the plaintiff and the defendant. I would respectfully disagree with you about that. I think that the case law, there's a sufficient concentration of cases in Illinois that would, if a contract is otherwise reasonable, namely it wasn't coercive, it's not a contract of adhesion, et cetera, that that would trump, it would override any other omitted, deleted contacts or otherwise. Well, this contract is for the Mahegan Sun, which also happens to be on tribal grounds. So there are other, you know, in the legislation. Well, that might be a foreign nonconvenience issue, but again, even that's overridden consensually. Well, because the location of the parties and the witnesses becomes a seminal issue. When we had the deposition for the 201L, the plaintiffs asked numerous questions regarding witnesses. Of those witnesses, 24 of them are in Connecticut. Four of them are in New York, and several of them are in Florida, not in Illinois. By contract, people can name their own poison if they agree to it. So even if it turns out to be inconvenient, if there is a consensual agreement, and it is for a legitimate legal activity, why shouldn't that contract override any other concerns as to inconvenience? You could, by contract, agree to pay a million dollars for a Ford Volt, you know, which is selling on the market for $40. As long as you're an adult, as long as no one is twisting your arm, nobody has a gun to your head, you can enter into any contract you like. And the courts will not reject jurisdiction simply because the court disagrees with the fairness of the contract without having enough to find it unconscionable. Certainly, but courts have actually rejected it on those basis. Where? When the residency of the parties is at issue, when the court's execution and performance. Do you have those cases on hand? Well, the cases I've looked at, as far as the jurisdiction goes, I've looked at the case that you've authored in Knauss v. Gurdie, Coastal, Tabatos, Judge McBride's Rozier v. Cascade Mountain. And all of those speak to fundamental fairness for one. When there is an agreed clause for foreign selection. Well, the problem with this case is we don't have any agreement. Did anyone testify? Did Mr. Pabon or Mr. Cardenas ever say that they orally agreed to resolve their Illinois dispute in Illinois? No. There is no document in the record, nor is there any testimony from any of the parties that they orally agreed to resolve disputes in Illinois for Illinois contracts. True? Correct. That is clear. I think counsel would have to concede that. Well, that becomes a federal issue to which your opponent will hopefully address this. And the other point that the trial court, the trial court essentially carved out an additional component for jurisdiction by ruling that even if one sneezes in the state of Illinois, Well, we're not obligated to agree with every expression, hyperbolic or otherwise, of the trial judge in order to sustain his verdict if it's sustainable on other grounds. Oh, certainly. Go ahead. But in this case, what the plaintiff has done is they're using basic accounting principles, reconciling accounts, profits and losses, expenditures. They're using that to say that because there were debits and credits in their own accounting department, that somehow equals to a series of contracts, which is absolutely not true. Well, it's contradicted by your client. So the question is, was this left undone in the trial court? Are there questions of material facts? If there are, an evidentiary hearing has to be taken. Correct. And the trial court just gave short shrift to answering. You say there are not questions of material facts? Do you agree if there are that there has to be an evidentiary hearing? Yes. If there are issues of material facts, there should be an evidentiary hearing. And the trial court didn't resolve any of this. The trial court simply didn't even look to see where the cause of action arose. And it's clear from the contracts that are attached to the plaintiff's complaint. But the court did conclude there wasn't sufficient business conducted to hold this defendant to the court's jurisdiction because of regular transaction of business. Correct. It focused solely on whether or not the performance of the party's contract was the result of money being owed in Illinois. And Cabone says there was never any money owed. There was no contract that wasn't performed that resulted in money owed in Illinois. And there was no series or some large oral umbrella agreement. Now, Cardenas took the opposite view. And although he actually couldn't say whether money was owed as a result of something in Illinois, that's what his proposition was. He took it a step further. He had his chief financial officer prepare his own accounting statement with debits and credits as these concerts were going on. So Cardenas, in his deposition, as you look through the records, admits that at the end of the concert in Chicago, there was $70,000 that was owed to Mr. Cabone. So he actually admits that neither of the parties are disputing that. So that's not in the litigation. Right. That should not be at litigation. That's the basis that they're using. However, I'm curious about some exploration behind the word series. You're assuming that for the word series to have any kind of significance in establishing minimal confidence, it has to be a comprehensive agreement that can be enforced as a contract. Now, supposing it's not enforceable as a contract, but it represents, nevertheless, a step in the negotiation of the contract. Now, the case law says that negotiations alone is generally not enough to provide a sufficient minimal confidence. Correct. But supposing those negotiations are accompanied, the negotiations that apply to a whole slew of what you would call separate contracts, supposing it's been accompanied with the enactment of certain individual contracts that are also centered in Illinois, might not the negotiation coupled with the execution of contracts that are focused on Illinois constitute a sufficient contact even for those contracts that refer up to jurisdictions other than Illinois? That's not the situation we have here, though. Why not? We don't have the situation, and also, I agree, as Your Honor also pointed out, in Knauss, in a breach of contract litigation, the mere transmission of funds is not sufficient for jurisdiction. The reason that scenario doesn't play out here. But supposing the parties, in effect, get married in Illinois. They marry to each other for purposes of doing further business. Okay. And that's not accompanied with an enforceable agreement, but it's really a strong inroad into the negotiation of whatever follows. Now, that may itself still not meet the requirement of being a contact, a sufficient contact, constitutionally. I'm not bottom-lining that. I'm not sure of that. But if it's also accompanied with the execution of various agreements that were encompassed in that negotiation, do we still have to exclude those agreements if those agreements are not the ones in dispute, but there are others that are still products of that negotiation, albeit executed in a manner that would not be, by themselves, sufficient to extend jurisdiction? So in a situation, if the parties were married and actually took that affirmative step in that agreement? Yes. Let's not use married too literally here. There could be a conceivable situation where that would apply. Here, that doesn't apply because when they met, they met in Connecticut to negotiate the Mohegan Sun concert. When they met, that was just a negotiation for sometimes in the future doing business. Then there was a lapse of time. There's different ways in the entertainment industry how these concerts can play out. One is where they co-share them. They're co-promoters of it, producers and purchasers. One is where one produces it and the other simply provides the entertainment. We have two of those here. The Chicago, Illinois one was where Mr. Cardenas produced it. His name is all over all of the statements with the UIC Pavilion. He's the producer. He marketed it. He negotiated it. He paid all the vendors. He took all the ticket box proceeds. Mr. Pabon simply provided the entertainment. That was the testimony that was supported by their own proposition. At the end of that, everyone was paid out. All the contractors were paid out including Mr. Pabon who was owed $70,000. Done. If you fast forward then to September of 2007. Did Pabon say that there was $10,000 owed at that point? No, that was following this next concert. What's the next concert? There was the concert in September of 2007. There was an Aventura and a Daddy Yankee concert that's in Connecticut. For that one, the strategy was different. There was one Daddy Yankee in Illinois and one Daddy Yankee in Connecticut. Is that right? Two separate groups. Yes, there were separate ones. One in Illinois that was done and then the Daddy Yankee in Connecticut. For the Daddy Yankee one in Connecticut, what they did was they decided they were going to share the proceeds. They shared the profits and the losses and that's why they signed the co-promotion agreement where they're listed as producer and purchaser and specific items are itemized in the contract. The integration clause also states that each contract is separate. What the plaintiff is trying to do is they're trying to lump it by creating this term series which doesn't exist. I've looked at the federal law and the state law. There's nothing that suggests that a contract that has an integration clause is part of any type of series. It wasn't. It was a separate contract. And when they were done with that contract- The only comment that I would like to make sure is on the map is that we don't necessarily have to look in order to find a series or what is intended by the word series that there be a contract for contracts, that there be an agreement to agree. It could be less than that and it still would constitute negotiations of an intense kind followed by various contracts implementing that, albeit informal, arrangement that the parties undertook. Well, the negotiations that they initially had were general discussions. It wasn't even negotiation per se. Once they started to solidify it, they started writing the co-promotion agreement for all the concerts- I mean, the ultimate test is whether the parties engage in any transaction that would give them a heightened expectation of being hailed into the courts of the foreign state. Certainly. And in this case, we have Mr. Cabone who has only been here once, has never been back since 2007, does not do marketing here, negotiating here. Well, isn't it enough that there was at least one contract performed here? Is that enough under the minimum context for the court to obtain jurisdiction? Or does there need to be some kind of money involved, some kind of performance of the contract for the cause of action that's pending? Sure. Well, there does need to be some cause of action that arises out of Illinois. Couldn't you argue that since there were multiple concerts, that this lawsuit arose out of the performance of a contract in Illinois? You could if the accounts weren't paid in full and stated, and Mr. Cabone was owed money. You would hang your hat on the fact that, at least according to Mr. Cabone, there was no money ever owed from the Illinois concert. What is it? Was there ever a written agreement for Illinois or not? No, there was no written agreement. The agreement was that Mr. Cardenas, who was the owner of the concert, he requested if Mr. Cabone could provide the entertainment, and that was the end of it. He provided Don Omar as the entertainment at the UIC Pavilion, and that was the expense of it. Mr. Cabone wasn't the producer. He wasn't on any of the documents. Okay. What about the later Illinois? There were two other Illinois. No, only one is at issue here. No, I understand, and that's the first one. Right. No, that's the third one. There were two other ones in 2006. Is there an issue that money is owed on those? No, not at all. He did the same thing. He provided the entertainment. When the lawsuit was first filed before the embedded complaint, there had only been one concert in Illinois. Is that true or not? No, there were the three concerts in Illinois. And no money, according to Mr. Cabone, has ever been the subject of debate regarding anything that took place in Illinois. Correct. Correct. Were the other two oral contracts as well? They were. So there's no written document for anything that took place in Illinois. Correct. The oral agreement was he would provide the entertainment and Mr. Cardenas would run the entire show. No one ever raised the statute of frauds because there was no written agreement. Isn't one of the issues what there's no one's really claiming, or at least Cabone is saying, no money is owed for anything that ever took place in Illinois. All right. Now, the question is if you have three concerts in Illinois, does that give the court jurisdiction for, you know, this provision that allows for the, when the cause of action arose from the performance of the contract in Illinois? Well, but that second part is the seminal part. If it arose from a concert here in Illinois. If the dispute did arise, then conceivably, yes. But here we don't have that. There were two 2006 concerts and the 2007. The two in 2006, they were done, they were paid for, not at issue. Okay. So then, again, we're going back to this thing about the series. Right. Mr. Cardenas says that they had a running tab and that was their agreement. Mr. Cabone says that there was never a penny owed for anything in Illinois. So I'm going to ask your opponents whether there's a question of material fact. That's how I see this. If there's a question of material fact, then the court has to conduct an evidentiary hearing. Your client's position is diametrically opposed to Mr. Cardenas. Mr. Cardenas said we had a running tally and that we were throwing this all in one big pot and that money was owed and that's how you get to Illinois. Cabone says no money was ever owed in Illinois, that the contract he had with Illinois has nothing to do with the lawsuits. Correct. And each contract, each concert they did would suffer on its own. Counsel, if I might interrupt you for a moment. How much time do you think you'll need to feel that you've ventilated what you thought is absolutely essential if we hold off on interrupting? To wrap this up? Yeah. Just very briefly. How about two minutes? I can do it in two minutes. Too much time? I can do it in two. Can I reserve two minutes for reply? Yes, you can. If you want to reserve, that's fine, certainly. Just a couple of minutes just to reply. The issue here is whether the trial court created a new standard. And we do have a plethora of cases that have come out of this district that talk about jurisdiction. If we're looking at the long-arm statute, it has to be both minimum context and that it arose out of it. And the issue is, was there any dispute following the 2007, the only issue, the concert here in Illinois? There wasn't. Mr. Cardenas in his deposition, and I encourage you to look at it, agrees. His own chief financial officer shows that there was money owed to the defendant, not that the defendant had any dispute with him. Now, he's trying to blend what is essentially a counting principle. Debits and credits, that's accounting. That's not the legal premise for jurisdiction, nor is there any case to support that. He's trying to blend that to create this argument of a series. When, in fact, the concert was done in 2007, in May, and then we have multiple concerts with actual contracts that are attached,  Also, we did read your briefs rather carefully. And I will rest on my brief as to the rest of my arguments. Thank you. Thank you. Thank you. Can I start by asking you whether you have any of the agreements that are currently in dispute that have choice of forum or choice of law provisions in writing? Each of the documents that's attached to the complaint. There should be a yes or no. I would say yes. Each of the documents attached to the complaint have a choice of law and forum clause in them. The choice of forum clause or sentence is contained in the paragraph that is identified as choice of law. Why would there be a debate between what is obviously, both of you are distinguished and honorable people. Why would there be a debate involving that issue when it's answerable with specific words on specific paper? What is it that gives your opponent the idea that she could deny that there was any such choice of law or choice of forum articulated in any writing attached to any of the agreements under litigation? I know it's asking a lot for you to speak for her. But on rebuttal, I'll do the same for her. I believe that we are dealing with this series of contracts and the question of the existence of a series of contracts or actually series of events, series of concerts, however you want to term these things, that it's the existence of the series that brings us here. Because the individual... Forget series for the moment. Let's assume every contract has to stand on its own legs. With that in mind, is your answer still going to be that there are specific provisions in each of the independent contracts that articulate a choice of law and a choice of forum? If each of the events were to be standing on their own by virtue of the written contract being unrelated to one another, then I would say that the answer would have to be no, that there isn't a specific choice of forum that relates to... Now, where is there a choice of forum or a choice of law specifically designating the specific agreement or writing in which that choice is expressed? Well, in the documents that are attached to the complaint as exhibits, each of those contain a paragraph that identifies the governing law being Illinois. And what are those attached documents? What do they consist of? There are three contracts. One is for Cheyenne and two are for Daddy Yankee. Those are the performers. And are those under litigation at the moment? Or are those contracts over which there is no dispute? Being part of the... Forget about series. Let's talk about the qualm fragments to make you feel comfortable about. Is there a dispute as to any of those fragments that contain choice of forum or choice of law? We do not believe that there is any dispute at all, including with respect to the amount that was owed based upon the documents that are attached to the complaint. Well, let me ask you this. When the first Illinois concert took place, was there any money owed to the plaintiff? I do not know. All right. And that's what Mr. Cartesian said. He said, I can't say. True? I believe so, yes. And that was because there were other things that were going on at the same time. But he couldn't say that there was money owed for something that took place in Illinois. Let me answer it in this way. If you were to take the accounting for each of the individual concerts and only look at the accounting for that particular concert and look at nothing else, then there would be no money owed by Cabone to Congress. All right. Well, when the original complaint was filed, there were two concerts. Yes. And they were for a breach of contract and an account statement. Yes. Did any of those provisions suggest that there was money owed from a contract that was performed in Illinois? I would say yes by virtue of the fact that there were a series of concerts and you can't look at these as individual, stand-alone events. All right. And that's the position of Mr. Cartesian. And wouldn't you agree that Mr. Cabone is taking the exact opposite position? He is claiming there was no large agreement for a series of events to have a running tab. No, I can't agree with that. And I do not actually, unless I'm missing something in the record. Well, didn't he say this? If you won't agree with that, didn't he say that after the Illinois concert, there was money owed but it was to me? Yes. Do you believe that there has to be some kind of money owed or some dispute about the activity in Illinois in order for the court to exercise jurisdiction in this case? Yes. And if it's not clear from the record whether there really was any dispute as a result of activity in Illinois, then the court has to determine that at an evidentiary hearing. I think that that would be what the entire trial would be about. All right. But for jurisdiction, don't we have to have some kind of contract or promise substantially connected to the state of Illinois in order to exercise jurisdiction? Yes. All right. And if you have three contracts, now the contract in Illinois was oral, right? There is no written memorandum of anything that suggests that we could look at to determine what the terms were. True? I would say that there was a subcontract and that subcontract for the Winson and Yandel, not the Diddy Yankee concert, for the Winson and Yandel concert, which was the last one, that was oral. So when you use the word subcontract, are you implying that there was a general contract, an overall agreement? Yes. Yes. Okay. Yes. Now where is that general agreement and where is the offer and acceptance in Willistonian terms that make an agreement an agreement? You have the testimony unrefuted by Mr. Cardenas in his deposition. Let me, I might stop you for a moment. Let me ask you perhaps something that will accelerate your analysis a little bit. If subsequently to that, those discussions in Illinois, Mr. Fabone and his corporation, CMM is that, would refuse to do any business with you, would you have a lawsuit against them? Would they be in breach of anything? I'm not certain. So what you're talking about are informal discussions. You're talking about what I suggested perhaps with your opponent, that there might be something other than an enforceable general agreement, but simply negotiations. That did not result in any formal undertaking. It depends upon the timing of the question. And if you're asking when they first had the discussion, if there would have been a binding contract at that particular time, there probably would have been. Well, why would there be a binding contract? As soon as they began. Are you considering this to be a unilateral offer of, in that a series that is accepted individually by each, that there's an acceptance, that the offer is there only to be accepted through the execution of an agreement, or was every agreement independently negotiated? You know, I'm talking about a very technical area. I understand. But what we have here is an offer for whatever business, Mr. Fabone, you want to do in Chicago, you agree to come to me first and don't go to my former partner. If Mr. Fabone would ignore that arrangement and go to somebody else, you're not sure whether you'd have a cause of action. That was your response, right? Not entirely. I said it depends upon the timing of the question as to when you're asking is it enforceable. Supposing they would enter into one agreement for one concert, and then he would refuse to enter into any others and go somewhere else. Would there be a cause of action? There could be, yes. You think? There could be. What would it be based on? All of the terms. You would have to examine all of the terms of the original offer and the acceptance and to the extent that you've got a partial performance. If you have a sufficient partial performance with respect to the original offer and acceptance. A partial performance only works for statute of frauds. Is that what you're addressing? It also creates the question of. Either there's an acceptance. There's no such thing as a partial acceptance to buy. It's either got to be accepted or rejected. And we're saying that it was in fact accepted. There are all future agreements that you entered into. Was there any idea of how many there would be? Was this like a supply contract where you enter into an agreement, a producer of goods enters into agreement with a consumer to take care of, to order, to purchase everything like a storekeeper who sells widgets undertakes to order all of his widgets that he might need from one particular supplier? And is that what you're saying happened here? Because I think you're, you know, this is going to be explored very carefully and I don't know that you want to plunge into that kind of analysis. Get away. I do not think that the agreement as it has been flushed out today would qualify as a requirements type of agreement. Okay. What about the integration clauses? Would you agree that the written documents that are in the record contain integration clauses? They do contain integration clauses, but I do not believe that. What do we do with them? You do not believe what? I do not believe that by having an integration clause in one contract and then you enter into another contract that isn't yet fulfilled, that the two contracts aren't fulfilled, that the second contract doesn't negate the prior contract. How about the Illinois contracts that are oral, true? Yes. Do they have integration clauses? Let me correct that. We believe that there were written contracts for the Illinois. You just put them in the record. We can't find them, so at this point we're sort of at a crossroads. We don't have the benefit of any single document relating to an Illinois contract, do we? This record does not, but no one is disputing that the event took place and that there was an agreement with respect to the event. But there's nothing in any of this record to suggest that somehow there was an agreement to the forum for the Illinois concerts, was there? Yes. I would say that by virtue of the Burger King case, United States Supreme Court, Burger King versus Red Swiss. There would have to be some intentional conduct under the Burger King case directed towards Illinois premeditatedly so. Express or imply. Yes. Express or imply. And here we have, again, you have to take the allegations in the complaint and to the extent that they're not actually refuted, and I do not see anything in this record where it says that Mr. Pabon comes in and says under oath, either in his deposition or in an affidavit, there was no agreement for a series of contracts. That is not in the record. It's not in his deposition? No, it is not in his deposition. Did he testify that there was no oral agreement to have multiple events, that each event stood on its own and there were agreements for each individual event, be they oral or written, that each event stood and fell on its own? He did state that each event stood or fell on its own, but that is taking that answer somewhat out of context and at record 400, actually 3,380 to 400, he identifies the agreement for the series of events in his deposition. Now, do you agree that for purposes of the court's jurisdiction, that the cause of action does have to arise from the performance of a contract in Illinois or some promise that was substantially connected to the state of Illinois? Some part of it, yes. All right. And if there's no money or anything that came out of Illinois or disputed in Illinois, what would be the reason to hail them into court? Well, what you have here is two people that are doing business. One, two, three, four, five, six. No, no, no. You can't do that on us right now because, first of all, you don't argue that there was general jurisdiction here. Secondly, the trial court clearly ruled that out, and your whole argument is premised on specific jurisdiction. If you want to stake your destiny in this case on a general doing business presence, be my guest. For my part, I will let you do it, but it's probably suicide. That is not what I was saying. What we have is PABOL and CMN are doing business on a series of transactions. They've got like ten transactions that they're doing over this course of time. Sounds like no business in Illinois to me. And the court ruled that out. I'm not saying that the locations that these individual events were taking place were all in Illinois. I'm not saying that. The vast majority weren't in Illinois. That's right. But what I'm saying is you have to have a problem with Illinois. You need to have some kind of a problem that arose from the contract that was performed in Illinois or that the promise was substantially related to the state of Illinois. And the question is, was there really anything that came out of Illinois? Because from the testimony, there's a suggestion by your client that we were running a tab, running a tally, and so there was money owed from Illinois. But Mr. PABOL says exactly the opposite. We weren't running a tab. Each of the agreements stood and fell on their own, and no money was owed from Illinois. So that's the question. And you have a situation which has not been disputed at all, that after one immediate event, there may have been money owed to each other. Or maybe after three immediate events that were done, they were even. You get into the fourth event, one owes one of the other money. You get into the fifth event, and it changes. And they're not paying each other off after each event. This is not a situation, and this is a misstatement by counsel, where she said that everybody was paid out after the Illinois immediate event. That is not true. But there's no dispute about that. That's not in litigation. It is part of everything that is going on. When you've got a contract, when you have a contracted event that's going to be coming up in June. And you're laying out money now in March. And then in April, an event takes place, and PABOL might be entitled to some credit on his side, but we've already laid out money for the May immediate event, or the June immediate event. But your opponent has cited us to a case, and I can't recall it offhand. I'd appreciate it if I could rebuttal. Your opponent might help me. That specifically says you can have a whole group of contracts, some of which may have sufficient contact with Illinois, but it doesn't rub off on any of the others. Each contract stands on its own feet. If your opponent can locate that case, it might be helpful. I think it was a mouse case. Thank you for that assistance. How do you respond to that? In that case, there was no agreement that the individual acts were part of the agreement here. Is there an agreement here, and that is a contract, an enforceable agreement? There's an overall agreement. I don't see an answer to that because we're going in circles on that issue. That's a rhetorical question. I would just point the court to record 398 through 401 with respect to that. Is there anything else, counsel, that you would like to add if we have no particular need for asking you any further questions? Yes, if I may. Will two minutes do it for you? Yes, it will. Counsel attempts to make a point out of the questioning that took place during the deposition of Mr. Pabon, which was limited to the discovery related to jurisdiction and that we had asked for the identity of a number of people. What we had there was a large number of people who had received money from the money that Mr. Pabon had taken from the Mohican Sun, and we were trying to find out who these people were and where they were and where they were located. These are all after-the-fact witnesses and potentially looking to see whether or not there was any subsequent contact with Illinois to determine whether or not Mr. Pabon was generally doing business in Illinois. And the fact that a lot of those people were only in Connecticut has nothing to do with whether or not they would even potentially be witnesses in the causes of action that are currently pending. And I think that that's a total red herring that was raised by the defendant. The closest that you get to the claim by the defendant that there was no agreement with respect to series is saying that each of the contracts or the events, each transfer stood on its own, but that did not in any time actually refute the fact that there was never an agreement for a series, and I suggest that the defendant failed to truly put that into issue. We also have the question of waiver, which was not addressed at all by me. You have the pro se motion. It was Part 1 or Part 1, it's not me. Paragraph 2 or Section 2 addressed jurisdiction both general and specific, but again, it was all it's not me. You've got the wrong defendant trying to say that all of these things were done by some corporation rather than by Mr. Pabon. And then you've got a 2615 motion to dismiss. You also have buried in there, but not properly identified, a motion to vacate any defaults. That motion to vacate defaults was granted, and then you have the subsequent motions that were filed, including a motion for substitution of judge, which recognizes the existence of... The opposition to motion to assess damages and motion to vacate defaults and motion to dismiss specifically claims a lack of general jurisdiction and specific jurisdiction. And they're separated into two parts along with the other motion that the complaint doesn't state the cause. Yes, but in the language of them, they clearly are saying that you've got the wrong defendant and that the corporation lack of entertainment... Statute doesn't delineate between the words or whether it's jurisdiction over an individual versus a corporation or some company doing business. That's not in the statute. No, but you can't continue to come into the court and invoke the court's jurisdiction in the way in which they have done. But if the original motion complies or comports with the statute, then the subsequent motions do not deprive that person of challenging the jurisdiction of the court. That's what Russell says, and a subsequent case... And the relief that was sought in that motion, which included the vacation of the default, that the court granted the vacation of the default and gave the parties time to respond. And what we're saying is that whatever was in that original motion was disposed of by the courts granting relief that was sought in that motion. The fact that the court didn't grant all relief is of no issue. And then what the statute says. The question is whether there was enough in the original motion to preserve the jurisdiction issue. If there was, then the subsequent activities don't submit to the jurisdiction. The statute says that if you file the correct motion in the first instance, that you're not going to be giving it up later. The real issue was this initial motion that he filed by himself, May 10th, with that position under the statute. If it was, then he preserved it. If it wasn't, then he has submitted it to the jurisdiction. You know, that last concert, would you agree that most of the money owed was related to Connecticut? There were a few events, and I don't remember right offhand the location, but they were not Illinois events. So the money eventually, in the final amount of counting, when it turned negative for Mr. Pabot, those arose out of the concerts that had taken place outside of Illinois. Anything else? No. Thank you, counsel. It's just that I would ask that you affirm the file. Oh, yes. Well, we have some rebuttal coming. Yes. I hope two minutes won't be too much. No, just very briefly. I'd just like to point out that when you're reviewing the complaint, the actual contracts that are attached, especially as to A and B, have nothing to do with any of the disputes. They're for concerts that are not even at issue here. And to clarify, in the cross-examination during the deposition of Henry Cardenas, he was cross-examined using his own document that he prepared as to debits and credits, that his CFO prepared. It does show that $70,000 was owed to the defendant, and that can be found on a supplemental record 436 through 437, 92 through 96. Well, my point was that it's not just to tell us that it's not in dispute here. Correct. And that's admitted by your opponent. Well, he was disputing it, and that's going back to Justice McClellan. Well, it's not in litigation. It's not in this litigation that that $70,000 is. My point was that there is no material fact that is at issue that would actually warrant an evidentiary hearing when that does come into play. So in this case, as you had pointed out, the crux of the dispute arose out of the Connecticut concert at the McKeegan Sun, and that's when everything fell apart. Did that have a written contract? Yes, it did. Did that have a form selection clause? It did not. It's not attached to the complaint. Okay. So what does have a form selection clause? The co-promotion agreements that are attached for other concerts, which is why they go back to the series. None of those were for Illinois. Correct. None of those are for Illinois. That's why if the series argument fails, there is no jurisdiction, which is why it's been manufactured. They're saying, look at all these co-promotion agreements. They've got form clauses. They've got choice of law clauses. They completely ignore the integration clauses. They're saying, if this is all in series, we can bring it back to Illinois. That's not true. Your opponent claims that all of these agreements are basically subcontractors, and they're basically different limbs of the same beast, the beast being the obligations created in Illinois, and that will depend perhaps on the legal enforceability of whatever took place in Illinois, or else it might venture into what I was exploring, whether it is a kind of a super contact that will override the fact that ordinarily negotiations by themselves will not suffice to create a sufficient contact on which to present in person or jurisdiction. But that might be a question that needs to be answered. Correct. This is contrary to basic contract law. They had individual contracts that they adhered to. The issue in Chicago, there was no dispute, and thus Illinois is not the proper jurisdiction. To that extent, the trial court incorrectly denied the motion to dismiss, and we respectfully ask that you reverse the trial court's decision. Thank you. Thank you. The case was argued with spirit and with superior competence, and the briefs were extremely helpful, and the case will be taken under advisement.